UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FRED PAFFHAUSEN,

                Plaintiff,

                                           Case Number 06-13324-BC
v.                                     Honorable Thomas L. Ludington

BAY COUNTY LIBRARY SYSTEM, BAY
COUNTY LIBRARY SYSTEM BOARD OF
TRUSTEES, and ELLA JANE MARTINI,

                Defendants.

_____ /

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION TO FILE A SUPPLEMENTAL BRIEF

Defendants' motion for summary judgment [Dkt. # 56] pursuant to Federal Rule of Civil Procedure 56 is presently before the Court. Plaintiff filed a six-count complaint alleging violation of his right to due process, violation of the Elliott-Larson Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2702, and breach of contract against all Defendants. Additionally, Plaintiff alleges that Defendant Ella Jane Martini ("Martini") committed the torts of defamation, injurious falsehood, and tortious interference with contract by making public statements concerning his employment.

Plaintiff, the former library director for Defendant Bay County Library System ("Library System"), alleges that Defendant Bay County Library System Board of Trustees ("Board") and the board chairperson, Martini, terminated his employment without cause. Plaintiff asserts that Defendants discharged him because of his participation in an internal investigation of a Michigan Department of Civil Rights ("MDCR") complaint regarding an alleged incident of racial discrimination. Defendants maintain that Plaintiff's employment was terminated for cause and their

actions conformed with the requirements of the employment contract.

Defendants contend that the Court should dismiss Plaintiff's 42 U.S.C. § 1983 due process claim because Michigan law does not recognize a protectable property interest of continued employment in an "at-will" contract. The Court will **DENY** the motion with respect to the due process claim. While Plaintiff's employment contract did permit an "at-will" termination with payment of a year's salary, it otherwise only provided for termination with cause. The termination for cause provision of the contract demonstrated a property interest in continued employment, entitling Plaintiff to appropriate process.

Second, Defendants assert that Plaintiff can not establish a prima facie retaliation claim under ELCRA because Plaintiff did not engage in a "protected activity" and is unable to demonstrate by a preponderance of the evidence that Defendants terminated his employment for his participation in the MDCR's investigation. The Court will **GRANT** Defendants' motion with respect to the ELCRA claim because the record demonstrates that Plaintiff's participation in the MDCR investigation was on behalf of Defendants and not adverse to their interests. Additionally, Plaintiff has not demonstrated, by a preponderance of the evidence, that Defendants' reasons for termination of his employment were pretextual. *See McDonnell Douglas Corp. v. Green , 411 U.S. 792 (1973)*

Third, Defendants contend that Plaintiff has not established a prima facie breach of contract claim. The Court will **GRANT** the motion with respect to Martini and the Board because they are not parties to the contract. The Court will **DENY** the motion with respect to the Library System because a factual dispute exists about the conduct identified as the basis for Plaintiff's discharge for cause.

Fourth, Martini contends that she is immune under Mich. Comp. Laws § 691.1407 from

Plaintiff's tort claims for defamation, injurious falsehood, and tortious interference with contract. The Court will **DENY** the motion with respect to Plaintiff's tort claims because Martini may not be immune under the statute because Plaintiff has raised a factual question asserting Martini acted outside of the course of her employment.

Finally, Defendants filed a motion to file a supplemental brief in support of its motion for summary judgment [Dkt. #78]. The Court will **DENY** Defendants' motion because Defendants had an opportunity to raise the supplemental arguments in its original filings and have not offered recently decided precedent.

I

On October 13, 2004, Plaintiff entered into an employment contract with the Library System. Prior to accepting the position of director with the Library System, Redford Township District Library employed Plaintiff. Dkt. # 56-21. Under the terms of the Library System employment contract, Plaintiff became the library director for a period of five years. Dkt. # 56-3. The contract outlined the following termination procedures:

> 8. <u>TERMINATION</u>. The Employee may be terminated with cause by the Library System Board. Employee may be terminated as a result of gross misfeasance or malfeasance, neglect of duty, conviction of a felony or serious misdemeanor, violation of Board policies and procedures, or for breach of the terms and conditions of this contract. Notice of termination will be provided to the employee in writing.
>
> In the event the majority of the Board decides to terminate the employment of the Library Director without cause during the term of this contract, the Library System shall pay the employee an amount equal to one years salary at the rate in effect at the time of termination, together with any accrued fringe benefits as allowed by Board policy.

Dkt. # 56-3. The contract also set forth the procedure for performance evaluation:

> 11. <u>PERFORMANCE EVALUATION</u>. The Library System will review and evaluate the performance of the Employee on an annual basis, with the exception of

the first year of employment, in which an evaluation will be conducted on both the anniversary of six (6) months of employment and on the anniversary of one (1) year of employment. The evaluation will be based on specific criteria developed by the employer in consultation with the Employee. A written summary of such review and evaluation will be provided to the employee.

*Id.* Michael Gray, the Library System's former chairperson, was the signatory to the contract on its behalf.

On or about March 31, 2005, the Library System evaluated Plaintiff's performance, rating him as either "outstanding" or "above average" in five employment categories. Dkt. # 67-11. Plaintiff's annual review, conducted in October of 2005, rated him as "outstanding" in one category, "above average" in another category, "needs improvement" in another category, and satisfactory in two other categories. Dkt. # 67-12.

On March 20, 2006, Martini authored a letter notifying Plaintiff of his discharge. The letter stated in pertinent part:

Please be advised that effective immediately your employment with the Bay County Library System is terminated for cause including but not limited to: gross misfeasance and/or malfeasance of office, neglect of duty, violation of Board policies and procedures and other breaches of the terms and conditions of your employment agreement including without limitation your failure to perform all of the duties of your job description and violation of the personnel policies of the Bay County Library System.

Dkt. # 56-4. Though Martini's letter lists broad categories of conduct justifying Plaintiff's discharge, an alternative draft of the letter details the following conduct that supports termination for cause:

1. Your continued use of profanity in house and in public.
2. Not completing assigned requests of the Board . . .
3. Call (sic) Employees and Board members names.
4. Works only with one Board member – Does not keep total Board informed.

\* \* \*

-4-

6.  Made public a filed complaint of Civil Rights Suit prior to discussing in Closed Session with Board.

* * *

8.  Your written refusal to work on millage renewal.  This was your first assignment when you were hired.

* * *

12 Insubordination – not showing up for meeting, March 17, 2006 and not notifying anyone that you would not be attending.

* * *

15.  Your intimidation to (sic) employees and the public by showing them a bullet and saying 'your name is on this.'  This is a very serious threat.

Dkt. # 67-15.  It appears that this draft of the discharge letter was not provided to Plaintiff at the time of discharge, instead being produced during this litigation's discovery period.

On March 21, 2006, the Board convened for a special meeting to ratify the termination of Plaintiff's employment.  Dkt. # 67-16.  According to the meeting's minutes, the Board ratified the discharge by a four to one vote.  Trustee Howard Wetters ("Wetters") opposed the discharge.  The minutes documented the Board's discussion:

> H. Wetters referred to the letter, and asked Chairperson E. J. Martini to produce the evidence to back up these accusations stated in the letter.  He pointed out he has not received any correspondence or any indication that these issues had been brought to the Director's attention.  He added that the Board recently gave the Director a satisfactory employment review.  He stated there has been no formal board action that would suggest goals or changes the Director should take.  James Davison stated he disagrees; that there were goals listed for the Director at his last job evaluation.  H. Wetters responded the board never voted on those particular goals; they were suggestions from individual trustees which does not constitute direction from the board.  J. Davison responded, the motion made at that particular board meeting, including direction and a list of goals that the Director needed to follow, which was adopted by the board.  H. Wetters restated his request, that as a Library Board trustee, he wants to see evidence and or the process E. J. Martini followed to make these accusations.  E. J. Martini responded that the employee is aware of the

evidence and that as she is anticipating a possible lawsuit, will not at this time list the accusations. H. Wetters questioned E. J. Martini as to why she would put the board in this position where she expects a lawsuit. He stated that as Chairperson of the Library Board, she has put the funds of the taxpayers of Bay County at risk for legal action, but is not willing to justify these actions. E. J. Martini assured him she would when the time came. She then asked the Board's attorney if she was required to list these issues now. Attorney James Nisidis responded that it would be the Chairperson's decision whether to elaborate on the reasons that have brought about this termination. H. Wetters asked for an opinion by the attorney, as to what authority Library Board Chairperson E. J. Martini has, to fire Fred Paffhausen without first consulting with trustees since typically, the Library Board as a whole hires and fires. J. Nisidis responded she is not familiar with the Library's bylaws, as to whether there is authority by the Board chair or a subcommittee to take this action, and then subsequently ratify the decision. Certainly, if the action was taken and ratified by the board, then it is in effect. She pointed out that she was not asked to review the bylaws of the Library Board but to be present at this meeting to address issues related to employment matters. E. J. Martini pointed out that under the contract it states the Directors work directly under the Board Chairperson. H. Wetters responded it does not allow for independent authority to the Board Chairperson to terminate employment; the contract is with the entire Board, not just the Chairperson.

H. Wetters asked that the meeting minutes reflect that it is clear from his perspective that E. J. Martini, as chairperson and J. Davison as Chairperson of the Personnel Committee, have willfully engaged in a vendetta against the Director. They have done everything in their power to arrive at this point. The fact that they made these kinds of accusations against any person without being willing to stand up in some fashion, verify and validate what has been done is quite frankly, well, there's a special place in Hell for people who do things like that.

H. Wetters further explained that there is a process for employees that include the need to go through a notification of deficiency; an opportunity to correct the deficiency; an opportunity to go through that process but he does not see where this board has done that at all. He stated he does agree with E. J. Martini, and believes there will be a lawsuit; that it is most likely inevitable given the way J. Davison and E. J. Martini have pursued this matter. He suspects the lawsuit will cost the Library hundreds of thousands of dollars and would most likely involve the Library in a lawsuit all summer just before the millage needs to be passed. As they say in the Guinness ad, 'Brilliant!'

Dkt. # 67-16. The minutes do not indicate whether Plaintiff attended the public meeting. At his deposition, Wetters indicated that Martini distributed a letter with justifications for Plaintiff's

discharge after that meeting. Dkt. # 67-3 at 29.

According to the Michigan Public Library Trustee Manual, Dkt. # 67-6, the Board is authorized to "[a]ppoint, supervise, evaluate, discipline or remove a director." *Id.* at 5. The Board is empowered to act "as a whole; Individual trustees may not act alone, nor speak for the board as a whole, unless authorized by the entire board. Also, the board chair has no more authority than another board member, unless it is expressly given by the board at an official meeting." *Id.* at 6.

The governing bylaws indicate that the Library System and the Board are organized under Mich. Comp. Laws § 397.301 *et seq.* Dkt. # 67-10. The chairperson's duties include presiding over meetings, enforcing the Board's policies, "provide general supervision and guidance to the director," and "act as the official representative of the Board . . ." *Id.* at 3. In contrast, the Board is responsible for appointing and removing a director, and the director is "under the Board's direction and review." *Id.* at 7.

The parties dispute Plaintiff's conduct between his date of employment on October 13, 2004 and March 20, 2006. As detailed in the draft letter of termination, Defendants contend that Plaintiff conducted himself in a grossly inappropriate and unusual manner. *See* Dkt. # 67-15. Deposition testimony of Plaintiff, Library System employees, and third parties indicate that Plaintiff conducted himself in an unorthodox manner.

Defendants first contend that Plaintiff brought firearms and ammunition to work, for the purpose of intimidating others. Plaintiff denied that he brought firearms inside the library, but acknowledged possessing firearms in his vehicle parked at the library. Plaintiff's Deposition at 49-50. Plaintiff also acknowledged that he kept a "50 caliber bullet cartridge, 3006 cartridge and two or three pistol cartridges" in a cup on his desk. *Id.* at 51-52. A former employee recalled that

Plaintiff passed a bullet to another person attending a group meeting in his office. Dkt. # 56-7 at 11-12. The employee also recollected observing handguns and shotguns in Plaintiff's office and vehicle. *Id.* at 16-18. Another employee recalled Plaintiff showing her a gun at work. Dkt. # 56-9 at 7. A newspaper reporter indicated that Plaintiff threatened him during a conversation by removing a bullet from his drawer and telling him that the bullet had the reporter's "name on it." Dkt. # 56-8 at 6. Plaintiff also told a board member that his friends would help him "chop [] up" a dead body after killing someone. Dkt. # 56-10 at 45.

Second, Defendants contend that Plaintiff used offensive language and discussed inappropriate topics while representing the library. A former employee recalled that Plaintiff would often call him names, including "asshole," but acknowledged that others also used profanity at the Library System. Dkt. # 56-7 at 14, 28. The assistant director recalled two employees lodging informal complaints regarding Plaintiff's language. Dkt. # 56-11 at 12. Plaintiff also allegedly used profanity in a speech given on behalf of the library to the Essexville Lion's Club. Dkt. # 56-14 at 6. Additionally, Plaintiff allegedly discussed a miscarriage that occurred in a library restroom while speaking to another civic group. Dkt. # 56-15 at 7. On March 8, 2006, Martini informed Plaintiff that she was aware that he had used "unsuitable language" during his speeches. Dkt. # 56-13. The letter cautioned Plaintiff that such language would "not be tolerated" and that "[a]ny such further incidents may result in time off without pay, and possible discharge." *Id.*

Third, Plaintiff allegedly fell asleep on a regular basis while in his office. A former employee observed him sleeping "a few times a week." Dkt. # 56-7 at 12. Additionally, Martini observed Plaintiff sleeping in his office on two or three occasions. Dkt. # 56-2 at 7-8.

Finally, Defendants contend that Plaintiff failed to fulfill responsibilities associated with the

Library System's millage efforts. Dkt. # 56-17. Allegedly, Plaintiff did not file certain required filings with the Bay County Clerk. On August 25, 2006, the interim director sent a letter to the Bay County Clerk explaining that Plaintiff neglected his duty to file the necessary paperwork. The letter indicated that the Library System was unaware of Plaintiff's alleged neglect until August of 2006. Defendants contend that they discovered this alleged neglect of duty after discharging Plaintiff.

Two other sets of circumstances are relevant to Plaintiff's complaint. First, Plaintiff contends that his discharge was in retaliation for his participation in an investigation conducted by the MDCR. On February 15, 2006, a library patron, Lyn Adanich ("Adanich"), filed a complaint with the MDCR. Adanich had visited the library with her two daughters–one is of African heritage and one is caucasion. Adanich and her two daughters were exiting the library when the security system sounded. Allegedly, library staff only searched the bag of the daughter of African heritage. MDCR representative Felice Howard ("Howard") initiated an investigation. While investigating the complaint, Howard did not have any contact with Plaintiff. Dkt. # 56-14 at 14.

On February 15 or 16, 2006, Plaintiff became aware of the complaint when he spoke with Adanich on the telephone concerning the incident. Dkt. # 56-6 at 80. Thereafter, Plaintiff conducted a limited investigation by questioning the involved employees and concluded that Adanich's complaint was without merit. *Id.* at 81, 84. On March 13, 2006, Plaintiff received copies of the MDCR complaint, interrogatories, and requests to produce documents via mail. *Id.* at 77. Plaintiff began to draft responses, but never submitted the responses to the MDCR. *Id.* at 97-99. Plaintiff does not indicate that he spoke with investigators or was involved in any manner except for the internal investigation.

Lastly, Plaintiff alleges that Martini made multiple defamatory statements to a Bay City

Times reporter.  The defamatory statements appeared in Bay City Times articles published on January 22, March 6, March 21, March 22, and April 5 of 2006.  Martini denies making any defamatory statements to press regarding Paffhausen.  *See* Dkt. # 56-2 at 11-15.  Martini acknowledged that it is not her official responsibility to discuss an employee's performance with the press.  *Id.* at 28.

II

Defendants' motion seeks to dismiss some claims pursuant to Federal Rule of Civil Procedure 12(b)(6) and also seeks summary judgment pursuant to Federal Rule of Civil Procedure 56 with respect to other claims.  Rule 12(b) allows dismissal for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993).  When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief."  *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996).  "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions."  *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1965 (2007) (citations omitted); *see also Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) ("[W]hile liberal, this

standard of review does require more than the bare assertion of legal conclusions."). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombley*, 127 S.Ct. at 1965, (Citations omitted). "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops*, *Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). *See also Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied*, 484 U.S. 945 (1987).

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper

evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must 'do more than simply show that there is some "metaphysical doubt as to the material facts."'" *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir. 1994), and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

### III

### A

Defendants' primary argument is that Plaintiff failed to state a claim for a due process violation because he has not established a property interest in his continued employment. Though Defendants assert that the Rule 12(b)(6) standard is applicable in this analysis, a cursory review of Plaintiff's complaint reveals that he alleged that he had a property interest in his employment. *See* Dkt. # 1 at ¶ 42. Thus, the Rule 56 framework is appropriately applied in this instance.

Defendants contend that Plaintiff's employment contract, which allowed for termination with or without cause, was an "at-will" contract. As such, Defendants assert that Plaintiff does not have a protectable property interest in his continued employment.

To show a violation of 42 U.S.C. § 1983, a plaintiff must show that a defendant acted under color of state law and that the offending conduct deprived her of rights secured by federal law. *Mezibov*, 411 F.3d at 717 (citation omitted). "A governmental entity can be held liable under § 1983 only if a plaintiff establishes 'an unconstitutional action that implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers . . . .'" *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 261 (6th Cir. 2006) (*quoting Shamaeizadeh v. Cunigan*, 338 F.3d 535, 556 (6th Cir. 2003)) *(quoting Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). A governmental entity, such as the Library System in the instant matter, "can only be liable for its members' actions where those members have final authority to establish municipal policy." *Id.* (*citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-28 (1988); *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1993)). A single action may be considered "official municipal policy, as long as the decisionmaker acts with a governmental authority." *Id.* (*citing Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).

On the Court's inquiry, Defendants contended that Plaintiff could not establish a prima facie Section 1983 claim, because Plaintiff could not establish that the alleged due process violation was as a result of a municipal policy or custom. The allegations and record demonstrate that Plaintiff nevertheless has established this requirement. It is undisputed that Martini issued a letter of discharge and that the Board ratified the termination of employment. Though Plaintiff only alleged a single violation of due process rights, the Board, as the decision maker acting with governmental authority, ratified the action. Thus, Plaintiff has fulfilled the requirements of a prima facie Section 1983 claim.

Turning to the substantive allegation advanced by Plaintiff, the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" Federal courts have recognized that state civil servants may have a property interest in continued employment under certain circumstances and must be afforded due process before being discharged. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1986); *Relford v.*

*Lexington-Fayette Urban County Government*, 390 F.3d 452, 460 (6th Cir. 2004) (Recognizing that "[u]nder state law, government and civil service employees may have a property right in their continued employment"). Determining whether a former governmental employee has a property interest in continued employment requires two inquiries. First, courts must initially determine whether a protected property interest exists; absent an interest, no right to process exists. *Singfield v. Akron Metropolitan Housing Authority*, 389 F.3d 555, 565 (6th Cir. 2004). Second, assuming that the first step is answered in the affirmative, the court must consider what process is due. *Id*; *see also Johnston-Taylor v. Gannon,* 907 F.2d 1577, 1581 (6th Cir. 1990).

The determination of whether a property interest in continued employment exists must be made in reference to state law. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539 (1985) (Stating that "property interests are not created by the Constitution . . . [but are] defined by existing rules or understandings that stem from an independent source such as state law") (citation and internal quotations omitted). A plaintiff "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Bailey v. Floyd County Bd. of Educ. By and Through Towler*, 106 F.3d 135, 141 (6th Cir. 1997).

"A public employee does not have a property interest in continued employment when the position is held at the will of the employee's superiors and the employee has not been promised termination only for just cause." *Manning v. City of Hazel Park*, 509 N.W.2d 874, 878-79 (Mich. Ct. App. 1993) (*citing Bishop v. Wood*, 426 U.S. 341 (1976)). As a general proposition, an at-will employment contract is defined as "[e]mployment that is usually undertaken without a contract and that may be terminated at any time, by either the employer or the employee, without cause." *Black's Law Dictionary* 566 (8th Ed. 1999). In Michigan, "[e]mployment contracts for an indefinite

-14-

duration are presumptively terminable at the will of either party." *Manning*, 509 N.W.2d at 878

(c*iting Lynas v. Maxwell Farms*, 273 N.W. 315, 316-17 (Mich. 1937)). "To overcome the

presumption of employment at will, a party must present sufficient proof of either a contractual

provision for a definite term or a provision forbidding discharge in the absence of just cause."

*Manning*, 509 N.W.2d at 878 (*citing Rowe v. Montgomery Ward & Co., Inc.*, 473 N.W.2d 268

(Mich. 1991)).  The Michigan Court of Appeals recognized as follows:

> [I]t is somewhat misleading to talk about employment contracts as being either 'at-will' or 'just-cause.' In some employment contracts, employers choose to retain unfettered discretion to terminate an employee's employment when doing so would not violate the law. In other employment contracts, employers agree to limit their discretion to terminate an employee's employment in some way. Employers and employees are free to bind themselves as they wish, and 'at-will' and 'just-cause' termination provisions are merely extremes that lie on opposite ends of the continuum of possibilities.

*Thomas v. John Deere Corp.*, 517 N.W.2d 265, 267 (Mich. Ct. App. 1994).

Defendants contend that Plaintiff's employment contract was "at-will" under Michigan law;

thus, Plaintiff did not have a protectable property interest. The contract itself does not support the

conclusion that Defendants "retained unfettered discretion" to terminate Plaintiff's employment.

First, Plaintiff's contract was set for a term of five years, which rebuts the presumption of an "at-

will" contract as established in *Lynas*, 273 N.W. at 316-17.  Second, and most importantly, the

contract included provisions that addressed termination "for cause" and "without cause."  Even

assuming that the inclusion of a "without cause" termination provision establishes that the contract

is "at-will," that conclusion ignores the fact that termination "without cause" entitled Plaintiff to an

additional year of salary.  The contract establishes that Plaintiff had a property interest in his

continued employment for the term of his contract if the employer did not exercise its right, upon

payment of one year's salary, to terminate the contract without cause.

Defendants raised some alternative arguments, which can be addressed in short order. First, Defendants contend that Plaintiff has failed to state a claim because "Plaintiff's complaint fails to state what process was due, and whether it was denied." Dkt. # 56. A review of Plaintiff's complaint reveals that Plaintiff alleged the termination of employment "resulted without Plaintiff being afforded due process of law." Dkt. # 1 at ¶ 39. This allegation meets the liberal pleading standards of the federal rule. FED. R. CIV. P. 8(a)(2). Defendants are not entitled to dismissal of Plaintiff's due process claim. Defendants' underlying argument, however, is that Plaintiff has not articulated what process was due. After reviewing the record, it is relatively clear that Plaintiff received a letter terminating his employment prior to any attention by the Board and that the March 21, 2006 Board meeting fell short of the requisite process.

Second, Defendants contend that Plaintiff's due process claim against individual persons fails because a "person" can not be held liable under 42 U.S.C. § 1983. *See Hafer v. Melo*, 502 U.S. 21, 26 (1991) (Holding that a state official in his or her official capacity is not a "person" under the meaning of 42 U.S.C. § 1983, but is a "person" under the meaning of the statute in his or her personal capacity). *Hafer* addressed whether a plaintiff may assert a claim against a state official, in either the defendant's official or personal capacity. Ultimately, the Court held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Id.* at 31. Here, Defendants' reliance on *Hafer* is misplaced. Factually, Defendants are not "state officials" as in *Hafer,* and that decision is inapplicable to the instant matter. Defendants' argument, however, raises the question of the capacity that Plaintiff has named Defendants in this case.

A plaintiff's failure to expressly state that the official is being sued in his or her individual capacity may be construed as an intent to sue the defendant only in his official capacity. *See e.g.*

*Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). When a plaintiff does not clearly indicate a defendant's capacity in the pleadings, the Sixth Circuit evaluates whether "the defendants have received notice of the plaintiff's intent to hold them personally liable . . . " *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001)(en banc). Courts consider the nature of a plaintiff's claims and a defendant's defenses, requests for compensatory or punitive damages, and later pleadings to determine whether a defendant received notice that personal liability was alleged through the "course of the proceedings." *Id.* at 772 n.1.

Plaintiff's complaint did not identify the individual members of the Board. Nor did it indicate whether Martini was named in her official or personal capacity. Defendants, however, advanced arguments that the Board and Martini are entitled to qualified immunity. A governmental entity defendant is not entitled to qualified immunity. *Myers v. Potter*, 422 F.3d 347, 352 (6th Cir. 2005). Moreover, an individual in their official capacity is not entitled to qualified immunity because a claim asserted against an individual in their official capacity is equivalent to asserting the claim against the governmental entity itself. *See Wilson v. Eliot County, Ky.*, 198 Fed.Appx. 471, 474 (6th Cir. 2006). Thus, Defendants' argument acknowledges that Plaintiff has not clearly delineated whether certain Defendants are named in their official capacity, personal capacity, or both capacities.

Viewed in their entirety, Plaintiff's pleadings do not provide adequate notice that the members of the Board are either individually named or named in their personal capacities. The complaint named the "Bay County Library System Board of Trustees" as a defendant, without naming individual trustees or indicating capacity. Moreover, the substance of the allegations do not allege that the individual members of the Board acted in their personal capacities. The "course of

pleadings" indicate that the Board was named in its official capacity and, thus, the doctrine of qualified immunity is inapplicable.

A similar ambiguity concerns the naming of Martini as a defendant. The complaint named "Ella Jane Martini," without indicating the capacity in which she was being sued. The substance of the allegations, however, indicate that Plaintiff asserted claims against Martini in both her official and personal capacities. First, the complaint alleges Martini engaged in conduct outside of the scope of her employment and for her personal benefit. The defamation claim alleges that Martini communicated slanderous statements to a third party. Moreover, the complaint that Martini was motivated to discharge Plaintiff so that she could become the acting library director. Finally, even though Martini is a member of the Board, Plaintiff individually identified her as a Defendant. This supports the notion that Plaintiff identified Martini in her personal capacity, separate from other members of the Board. Thus, Martini has adequate notice that she has been named as a defendant in both her official and personal capacities.

Having determined that Martini was named in her personal capacity, the Court must determine whether she is entitled to either of the immunities advanced by Defendants. First, Defendants contend that the Martini is entitled to absolute immunity as local legislators. *Bogan v. Scott-Harris*, 523 U.S. 44, 52-53 (1998). Though Defendants assert that Martini is a legislator, they do not assert any authority for the proposition that terminating an individual employee or officer is a "legislative" act. Thus, Martini is not entitled to absolute immunity as a local legislator

Defendants also contend that Martini is entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982). The qualified immunity analysis requires courts to evaluate whether, "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged

show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established." *Id., see also Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999). As discussed above, Martini is not entitled to qualified immunity in her official capacity. To the extent Martini is named in her individual capacity, a factual dispute exists that demonstrates she is not entitled to qualified immunity. It is undisputed that Martini issued a letter terminating Plaintiff's employment prior to any hearing and did not provide evidence or specific justification for the termination at the board meeting. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). *Loudermill*, and its progeny, clearly establish that a public employee with a property interest in his or her continued employment is entitled to a due process hearing prior to discharge. *Id.* at 542-43.

B

Next, Defendants assert they are entitled to summary judgment in their favor with respect to Plaintiff's ELCRA retaliation claim because Plaintiff has not identified a factual dispute that (1) he engaged in a protected activity or (2) there is a causal connection between the activity and retaliatory conduct. Assuming Plaintiff could establish a prima facie claim, Defendants contend that Plaintiff has not demonstrated that his discharge was a pretext for discrimination.

It is unlawful for an employer to retaliate against a person that "testified, assisted, or participated in an investigation" of a suspected violation of ELCRA. Mich. Comp. Laws § 37.2701(a). A plaintiff must demonstrate the following to establish a prima facie case of retaliation under ELCRA: "(1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that

there was a causal connection between the protected activity and the adverse employment action." *Garg v. Macomb County Community Mental Health Serv.*, 696 N.W.2d 646, 653 (Mich. 2005) (citation omitted).

In this instance, where Plaintiff engaged in an investigation on behalf of Defendants, the boundaries of "a protected activity" are crucial to determining whether Plaintiff has established a prima facie claim under section 37.2701(a). Defendants maintain that ELCRA's retaliation provision is similar to Title VII's retaliation provision and that the Court should look to Title VII to interpret the intent of Section 37.2701 . *Compare* Mich. Comp. Laws § 37.2701 and 42 U.S.C. § 2000e-3(a).[1]

The Seventh Circuit held that a common sense reading of Title VII suggests that a protected activity "refers to acts in support of the charge" because "the first act protected by the section is making a charge." *Twisdale v. Snow*, 325 F.3d 950, 952-52 (7th Cir. 2003). Similarly, ELCRA's retaliation provision protects "a person [that] has opposed a violation of the act." Mich. Comp. Laws § 37.2701. As such, a common sense reading of this provision would suggest that Plaintiff's

---

[1] Mich. Comp. Laws § 37.2701(a) provides: "[t]wo or more persons shall not conspire to, or a person shall not: [r]etaliate or discriminate against a person **because the person has opposed a violation** of this act, or **because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation**, proceeding, or hearing under this act." *Id.* (emphasis added).

42 U.S.C. § 2000e-3(a) provides: **"[i]t shall be an unlawful employment practice for an employer to discriminate** against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, **because he has opposed any practice made an unlawful employment practice by this title** [42 USCS §§ 2000e-2000e-17], **or because he has made a charge, testified, assisted, or participated in any manner in an investigation**, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17]." *Id.* (emphasis added).

-20-

investigation would need to be in support of the person that "opposed the violation." In other words, the person assisted the investigation on behalf of the person that filed the MDCR complaint.

If a plaintiff establishes a prima facie claim, then the burden shifts to the defendant to "articulate[] a legitimate, nondiscriminatory reason" for the alleged retaliatory conduct. *Feick v. County of Monroe*, 582 N.W.2d 207, 212 (Mich. Ct. App. 1998). "At this stage, defendant need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998). If the defendant meets its burden, then "the factual inquiry proceeds to a new level of specificity." *Id.* The burden shifts back to the plaintiff to establish that the proffered justification is pretextual " by showing the reasons had no basis in fact, if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or if they were factors, by showing that they were jointly insufficient to justify the decision." *Feick*, 582 N.W.2d at 212 (citation omitted). As first articulated in *McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973),* a plaintiff must demonstrate, "by a preponderance of admissible direct or circumstantial evidence, that there was a triable issue that the employer's proffered reasons were not true reasons, but were a mere pretext for discrimination." *Lytle*, 579 N.W.2d at 915.

It is undisputed that Defendants knew of Plaintiff's involvement in the investigation and that Defendants took adverse employment action. Additionally, the record demonstrates that Plaintiff has raised a triable issue of fact that there is a causal connection. The close temporal proximity between Plaintiff's involvement in the investigation and interrogatories, as well as Martini's contention that Plaintiff made the MDCR complaint public, infer that there is a causal connection.

The parties disagree on the meaning of "engaged in a protected activity." As discussed in *Twisdale*, 325 F.3d at 952-52, a common sense reading of an anti-retaliation statute would lead to the conclusion that the participation in the investigation would be in opposition to the employer's interests. Plaintiff stated that he performed an informal investigation and determined that there had not been a civil rights violation. Plaintiff has not furnished any evidence to support the conclusion that his investigation was in opposition to Defendants' interests. Indeed, the undisputed facts indicate that he performed an investigation on behalf of Defendants. Thus, Plaintiff has not established a prima facie retaliation claim under Mich. Comp. Laws § 37.2701.

Moreover, Defendants have articulated a legitimate, non-discriminatory reason for Plaintiff's discharge, thus shifting the burden to Plaintiff. As documented above, Defendants have proffered multiple non-discriminatory bases for Plaintiff's discharge.[2] Moreover, Plaintiff has not demonstrated, by a preponderance of the evidence, that the termination of his employment was in retaliation for his participation in the civil rights complaint. Thus, the Court will grant summary judgment in favor of Defendants with respect to Plaintiff's ELCRA claim because Plaintiff has not demonstrated that he "engaged in a protected activity," nor has he demonstrated, under *McDonnell Douglas*, that his discharge was in retaliation.

C

Plaintiff's breach of contract claim alleges that his employment contract entitled him to

---

[2] Plaintiff contends, however, that Defendants needed to articulate the non-discriminatory justifications **at the time of the termination** of employment. See Dkt. # 67 at 27-28. Plaintiff did not offer authority in support of that proposition. When applying the *McDonnell Douglas* test, the Michigan Supreme Court concluded that a defendant "must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Lytle v. Malady*, 579 N.W.2d 906, 915 (Mich. 1998).

employment for a five year period. Dkt. # 1 at ¶ 66. Moreover, Plaintiff's theory is that Defendants discharged him without cause, despite satisfactory performance reviews. *Id.* at ¶ 67, 69. Defendants contend that they are entitled to summary judgment because Plaintiff was discharged for cause.

The Library System asserts that it is entitled to summary judgment with respect to the breach of contract claim because it discharged Plaintiff for cause. While the record that has been developed in discovery supports Defendants' assertions that Plaintiff's behavior was unorthodox, the manner in which Plaintiff was discharged left no particularized rationale for their decision. First, the proffered reasons were not offered before or at the time of Plaintiff's discharge. Additionally, the termination letter formulaically listed general bases for discharge contained in the for cause termination provision of the contract that were, at best, general conclusions. The record does not clearly demonstrate what misconduct Defendants relied upon or when Defendants became aware of the alleged employment misconduct. Thus, the Court will deny the Library System's motion with respect to the breach of contract claim.

Lastly, the Board and Martini contend that each is entitled to dismissal of Plaintiff's breach of contract claim because they are not parties to the contract. The contract provides that it is an agreement between Plaintiff and the Library System. As such, the Board and Martini are entitled to summary judgment in their favor with respect to the breach of contract claim.

D

Martini contends that she is immune from Plaintiff's tort claims for defamation, tortious interference with contract, and injurious falsehood. *See* Mich. Comp. Laws § 691.1407(1). The defamation and injurious falsehood claims are predicated on Martini's alleged statements to a reporter from the Bay City Times, which she denies making. Dkt. # 1 at ¶ 76, 88. According to

Plaintiff's complaint, Martini allegedly offered statements that disparaged Plaintiff's performance as director and alleged that Plaintiff engaged in misconduct. *Id.* at ¶ 77-78. Martini's statements were made with the intent of harming Plaintiff. *Id.* at ¶ 89. Plaintiff's also alleges that Martini tortiously interfered with Plaintiff's employment contract by misrepresenting Plaintiff's performance as the director to the Board. *Id.* at ¶ 98. Martini sought to interfere with the intent to secure her own position at the Library System. *Id.* at ¶ 99.

"[E]ach officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer [or] employee . . . while in the course of employment . . . while acting on behalf of a governmental agency" if acting within the scope of the employees authority, the governmental agency is engaged in the exercise of a governmental function, and the employees act does not amount to gross negligence. Mich. Comp. Laws § 691.1407(2)(a-c). Additionally, the highest appointed executive official is immune from tort liability if he or she is acting within the scope of his or her executive authority. Mich. Comp. Laws § 691.1407(5).

The allegations advanced by Plaintiff allege conduct that is outside the scope of Martini's duties. Plaintiff alleges that Martini made false statements to a reporter. Plaintiff alleges, and Martini acknowledged in her deposition, that such statements are not within the scope of a chairperson's duty. Moreover, Plaintiff alleges it may be reasonably inferred that Defendant undertook such activity to inflict harm on Plaintiff and to secure the position for herself. Thus, Martini is not entitled to the immunity outlined in section 691.1407.

IV

Accordingly, it is **ORDERED** that Defendants' motion for summary judgment [Dkt. # 56]

is **GRANTED** in part and **DENIED** in part.  Summary judgment is entered in favor of all Defendants with respect to Plaintiff's ELCRA claim, and in favor of the Board of Trustees and Ella Jane Martini with respect to the breach of contract claim.

It is further **ORDERED** that Defendants' motion to file a supplemental brief [Dkt. # 78] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: April 24, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on April 24, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS
